```
 1  McGREGOR W. SCOTT
    United States Attorney
 2  WILLIAM S. WONG
    Assistant U.S. Attorney
 3  501 I Street, Suite 10-100
    Sacramento, California 95814
 4  Telephone: (916) 554-2790
```



**FILED**

OCT - 6 2008

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR. No. S-06-290 EJG |
| Plaintiff, ) | PLEA AGREEMENT |
| v. ) | |
| MICHAEL DEREK BRADLEY, JR., ) | |
| Defendant. ) | |

## I.

### INTRODUCTION

**A. Scope of Agreement:** The Superseding Indictment in this case charges the defendant with 18 U.S.C. §§ 2113(a) and (d), 2 - Armed Bank Robbery, Aiding and Abetting (Counts One, Three, and Five); and 18 U.S.C. § 924(c)(1), 2 - Use of a Firearm, Aiding and Abetting (Counts Two, Four, and Six). This document contains the complete Plea Agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B. Court Not a Party:** The Court is not a party to this Plea Agreement. Sentencing is a matter solely within the discretion of the Court, the Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement. If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this Agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise the sentence he will receive.

## II.

### DEFENDANT'S OBLIGATIONS

**A. Guilty Pleas:** The defendant will plead guilty to Counts Three and Five: 18 U.S.C. §§ 2113(a) and (d) - Armed Bank Robbery, and Count Six: 18 U.S.C. § 924(c)(1) - Use of a Firearm. The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis attached hereto as Exhibit A are accurate.

**B. Agreement to Cooperate:** The defendant agrees to cooperate fully with the government and any other federal, state, or local law enforcement agency, as directed by the government. As used in this Plea Agreement, "cooperation" requires the defendant: (1) to respond truthfully and completely to all questions, whether in interviews, in correspondence, telephone conversations, before a grand jury, or at any trial or other court proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at

1  which the defendant's presence is requested by the government or
2  compelled by subpoena or court order; (3) to produce voluntarily any
3  and all documents, records, or other tangible evidence requested by
4  the government; (4) not to participate in any criminal activity
5  while cooperating with the government; (5) to disclose to the
6  government the existence and status of all money, property, or
7  assets, of any kind, derived from or acquired as a result of, or
8  used to facilitate the commission of, the defendant's illegal
9  activities or the illegal activities of any conspirators; and (6) to
10 agree to any continuance of judgment and sentencing requested by the
11 United States.
12     If the defendant commits any crimes or if any of the
13 defendant's statements or testimony prove to be knowingly false,
14 misleading, or materially incomplete, or if the defendant otherwise
15 violates this Plea Agreement in any way, the government will no
16 longer be bound by its representations to the defendant concerning
17 the limits on criminal prosecution and sentencing as set forth
18 herein.  The determination whether the defendant has violated the
19 Plea Agreement will be under a probable cause standard.  If the
20 defendant violates the Plea Agreement, he shall thereafter be
21 subject to prosecution for any federal criminal violation of which
22 the government has knowledge, including but not limited to perjury,
23 false statements, and obstruction of justice.  Because disclosures
24 pursuant to this Plea Agreement will constitute a waiver of the
25 Fifth Amendment privilege against compulsory self-incrimination, any
26 such prosecution may be premised on statements and/or information
27 provided by the defendant.  Moreover, any prosecutions that are not
28 time-barred by the applicable statute of limitations as of the date

of this Plea Agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of any such prosecutions. The defendant agrees to waive all defenses based on the statute of limitations or delay of prosecution with respect to any prosecutions that are not time-barred as of the date of this Plea Agreement.

If it is determined that the defendant has violated any provision of this Plea Agreement or if the defendant successfully moves to withdraw his plea: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this Plea Agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this Plea Agreement, or any leads derived therefrom, should be suppressed. By signing this Plea Agreement, the defendant waives any and all rights in the foregoing respects.

## III.

### THE GOVERNMENT'S OBLIGATIONS

A. Recommendations:

1. **Dismissal:** The government shall move to dismiss with prejudice the remaining charges alleged in the Superseding Indictment at the time of sentencing if the defendant complies with

the terms and conditions contained in this Agreement.

2. **Acceptance of Responsibility:** The government shall recommend that the defendant receive a three-level downward adjustment in the base offense level pursuant to U.S.S.G. § 3E1.1(b) on the condition that the defendant fully accepts responsibility for his role in the offense.

## IV.

## MAXIMUM SENTENCE

A. **18 U.S.C. §§ 2113(a) and (d).**

The maximum sentence the Court can impose on each count charged in Counts Three and Five is not more than twenty-five (25) years of incarceration, a five (5) year period of supervised release, a fine of Two Hundred Fifty Thousand ($250,000) Dollars, and a special assessment of One Hundred ($100) Dollars. If the defendant should violate a condition of supervised release, he can be returned to prison for up to three (3) years.

B. **18 U.S.C. § 924(c)(1).**

The maximum sentence which the Court can impose on Count Six is a mandatory minimum sentence of seven (7) years to life of incarceration consecutive to any other sentence imposed on Counts Three and Five, a five (5) year period of supervised release, a fine of Two Hundred Fifty Thousand ($250,000) Dollars, and a special assessment of One Hundred ($100) Dollars. If the defendant should violate a condition of supervised release, he can be returned to prison for some or all of the term of supervised release actually imposed by the Court.

C. **Restitution.**

By signing this agreement, the defendant also agrees that the

1  Court can order the payment of restitution for the full loss caused
2  by the defendant's wrongful conduct. The defendant agrees that the
3  restitution order is <u>not</u> restricted to the amounts alleged in the
4  specific count to which the defendant is pleading guilty. The
5  defendant further agrees that he will not attempt to discharge in
6  any present or future bankruptcy proceeding any restitution imposed
7  by the Court.

## V.

## ELEMENTS OF THE OFFENSE

A.  <u>18 U.S.C. §§ 2113(a) and (d)</u>.

The defendant is charged in Counts Three and Five of the Superseding Indictment with armed bank robbery in violation of Sections 2113(a) and (d) of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant took from employees of the bank money belonging to the bank;

Second, the defendant used force and violence or intimidation in doing so;

Third, the deposits of the bank were then federally insured; and

Fourth, the defendant intentionally assaulted or put in jeopardy the life of any person by the use of a dangerous weapon or device in committing the offense.

B.  <u>18 U.S.C. § 924(c)(1)</u>.

The defendant is charged in Count Six of the Superseding Indictment with using and carrying a firearm during the commission

1  of a crime of violence in violation of Section 924(c)(1) of Title 18
2  of the United States Code.  In order for the defendant to be found
3  guilty of that charge, the government must prove each of the
4  following elements beyond a reasonable doubt:
5       First, the defendant committed the crime of armed bank robbery
6  charged in Count Five of the Superseding Indictment; and
7       Second, the defendant knowingly used or carried a handgun; and
8       Third, the defendant used or carried the handgun during and in
9  relation to the crime.
10      A defendant has "used" a firearm if he has actively employed
11 the firearm in relation to an armed robbery.  Use includes any of
12 the following:
13      (1) brandishing, displaying, or striking with;
14      (2) referring to the firearm in the offender's possession; or
15      (3) the silent but obvious and forceful presence of a firearm
16 in plain view.
17      A defendant has "carried" a firearm if he has transported the
18 firearm on or about his person.  This means the firearm must have
19 been immediately available for use by the defendant.
20      A defendant takes such action "in relation to the crime" if the
21 firearm facilitated or played a role in the crime.

## VI.

### SENTENCING DETERMINATION

24 **A. Statutory Authority:**  The defendant understands that the
25 Court must consult the Federal Sentencing Guidelines (as promulgated
26 by the Sentencing Commission pursuant to the Sentencing Reform Act
27 of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as
28 modified by United States v. Booker and United States v. Fanfan, 543

U.S. 420 (2005)), and must take them into account when determining a final sentence. Defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. Defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. Defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

## VII.

## WAIVERS

**A. Waiver of Constitutional Rights:** The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

**B. Waiver of Appeal and Collateral Attack:** The defendant agrees to waive all rights to appeal this plea and sentence and to attack collaterally this plea and sentence whether by way of a motion pursuant to 28 U.S.C. § 2255 or otherwise.

The defendant also gives up any right he may have to bring a

post-conviction attack on his conviction or his sentence. He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence.

If the defendant's conviction on the count to which he is pleading is ever vacated at the defendant's request, or his sentence is ever reduced at his request, the government shall have the right to file any new charges that would otherwise be barred by this agreement. The decision to pursue this option is solely in the discretion of the United States Attorney's Office. By signing this agreement, the defendant agrees to waive any objections, motions, and defenses he might have to the government's decision. In particular, he agrees not to raise any objections based on the passage of time with respect to such charges including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

## VIII.

### ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.

### APPROVALS AND SIGNATURES

**A. Defense Counsel:** I have read this Plea Agreement and have discussed it fully with my client. The Plea Agreement accurately

9

1  and completely sets forth the entirety of the agreement. I concur
2  in my client's decision to plead guilty as set forth in this
3  Agreement.

5  DATED: October 3, 2008                    JAMES GREINER,
6                                            Attorney for Defendant

7     **B.  Defendant:**  I have read this Plea Agreement and carefully
8  reviewed every part of it with my attorney. I understand it, and I
9  voluntarily agree to it. Further, I have consulted with my attorney
10 and fully understand my rights with respect to the provisions of the
11 Sentencing Guidelines and the sentencing factors pursuant to 18
12 U.S.C. § 3553(a) which may apply to my case. No other promises or
13 inducements have been made to me, other than those contained in this
14 Agreement. In addition, no one has threatened or forced me in any
15 way to enter into this Plea Agreement. Finally, I am satisfied with
16 the representation of my attorney in this case.

18 DATED: 10 3 08                             MICHAEL DEREK BRADLEY, JR.
19                                            Defendant

20    **C.  Attorney for United States:**  I accept and agree to this
21 Plea Agreement on behalf of the government.

22 DATED: October 02, 2008                   McGREGOR W. SCOTT
                                              United States Attorney

                                           By: _____
25                                             WILLIAM S. WONG
                                              Assistant U.S. Attorney

**EXHIBIT "A"**

**Factual Basis for Plea**

The parties agree that Exhibit A is only a summary of the facts and that the government and the defendant may provide additional facts to the Court at the time of the taking of the plea and sentencing.

**Count Three - Bank of America**

On February 25, 2005, at approximately 1758 hours, two Black males ran into the Bank of America, 8363 Folsom Boulevard, Sacramento, California, yelling, "Everybody get down and get your hands up!" As robber number one stayed in the lobby area to control the employees and customers, robber number two jumped over the counter. One of the tellers heard one or possibly both of the robbers ask, "Where's the cow, where's the cow?" After robber number two was over the counter, he told one of the victim tellers to "Give him the money." Robber number one was yelling, "Get the money, get the money, and get your hands up. I'll shoot somebody, I swear, I'll shoot somebody." Robber number one was yelling this and making demands and threats as he was pointing his gun at employees and customers in the bank.

Bank employees were able to identify the robbers as Black males even though the robbers had some type of masks covering most of their faces. Witnesses identified the handgun held by robber number one as a small, dark colored pistol. One of the witnesses heard robber one telling robber number two that he was taking too long and said this several times. Robber number one was also yelling at the customers and said, "I swear to God I'll shoot somebody."

Javaris Marquez Tubbs is now cooperating with the government and has identified Michael Derek Bradley, Jr. and Montrell Hall as the two robbers who entered the Bank of America to commit armed bank robbery. Tubbs stated that Bradley, Hall, and himself cased the bank while he was driving a rented blue Ford Escape SUV. Tubbs' role was to drive the vehicle and he parked in the apartment complex, which was separated from the bank by a wall, an open field, and a fence. Tubbs stated that the fence at the bank had a hole in it that one could climb through. Hall and Bradley exited the Ford Escape and climbed over the apartment complex wall. Tubbs waited in the vehicle as the getaway driver.

After Hall and Bradley completed the robbery, he observed them jump back over the apartment complex wall and they drove off in the blue Ford Escape to 4102 Spindrifter Lane, Elk Grove. Tubbs stated that a dye pack exploded, staining the gun and the money that was taken. Tubbs elaborated that the gun was inside possibly a pillow case with the money when the fled the bank. Tubbs stated that that was the reason the gun was stained with red dye when it was recovered by the California Highway Patrol on March 1, 2005.

The loss to Bank of America was approximately $11,676.00. The

bank was insured by the Federal Deposit Insurance Corporation at the time of the robbery.

### Counts Five and Six - Guaranty Bank

On April 8, 2005, at approximately 1248 hours, the Guaranty Bank, 8135 West Lane, Stockton, California, was robbed by two Black males. Robber number one was described as a Black male, early twenties, approximately 5'10", weighing approximately 180 pounds, wearing a dark blue hooded "L.A. Clippers" sweatshirt, dark pants, and a black ski mask. Robber number two was described as a Black male, early twenties, shorter than robber number one, wearing a light gray hooded sweatshirt, blue jeans, black ski mask, and armed with a handgun wrapped in a white sock or cloth.

Once in the bank, employees heard someone yell, "Get down. Get down."

Christine Gabel, a bank teller, had her attention drawn to a lot of yelling from the two robbers as they entered the bank. She observed the shorter one armed with a small handgun that was wrapped in a white towel. The robber held the gun in his left hand. Gabel also believed that the tall robber was holding a gun in his right hand when he entered the doors. Gabel heard the robbers yell, "This is not a joke, you are being robbed, and give me all your money!" Robber number one (the taller one) jumped the counter, ordered her to get to the ground, and started going through the teller drawers, taking the money. As robber number one was doing this, robber number two (the shorter one) pointed his gun and repeatedly told everyone not to move.

Mayela Galvan, a bank employee, had just picked up the telephone to order some checks for a customer when she heard someone yelling that caused her to believe they were being robbed. As Galvan looked up, she saw two robbers in the lobby area, pointing guns at them as they entered the lobby area of the bank.

Unbeknownst to the robbers, as they were taking money from the teller drawers, a bank dye pack was included in one of the packs of currency. As the robbers left the bank, the dye pack exploded, emitting red and orange smoke. Ivan Torres, a witness, had just moved into the apartment complex near the bank. He was looking out his window when saw two suspects park in a stall just south of his apartment. As he watched, they walked northbound toward where his car was parked. The two suspects turned and walked back around the apartment building. Torres went outside to his car and watched as the two suspects came back westbound a few minutes later. They got into a blue SUV and fled the apartment complex. Torres stated that he saw some red and orange smoke coming from one of suspect's pockets that looked like he was on fire. He pointed to the area where one of the suspects had left his Adidas shoes in the parking lot. He gave a partial license plate of 5GF_ _ _ and remembered that the suspect vehicle was a new Ford Escape SUV.

Defendant Bradley admits that he (robber number two) and

1  Javaris Tubbs (robber number one) robbed the Guaranty Bank by
   brandishing a handgun and threatening bank employees in order to
2  take money belonging to the bank.

3       The loss to Guaranty Bank was approximately $4,377.00. The
   bank was insured by the Federal Deposit Insurance Corporation at the
4  time of the robbery.